**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CASE NO.: 1:08-CV-00038**

**MARLON JOHNSON**                                                                                              **PLAINTIFF**

**v.**

**WILLIAM BAKER, ET AL.**                                                                                  **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motions in Limine (Docket #30, 35) and Plaintiff's Motion to Allow Jurors to View Jail (Docket #39), and upon Defendants' Motions in Limine (Docket #25, 26, 27). Defendants have responded (Docket #31, 40). Plaintiff has responded (Docket #29) and replied (Docket #43). This matter is now ripe for adjudication and the Court is sufficiently advised. For the following reasons, Plaintiff's Motions in Limine are GRANTED, Plaintiff's Motion to Allow Jurors to View Jail is DENIED, and Defendants' Motions in Limine are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On or about March 14, 2007, Plaintiff Marlon Johnson was arrested for criminal trespass and transported to Warren County Regional Jail. Defendants William Baker, Brandon Bryan, Brandon Herrington, Tommy Hurst, and Rodney Seiler were employees of the Warren County Regional Jail at the time of the arrest. Plaintiff alleges that, while at the jail, Defendants assaulted him and used excessive force against him (referred to hereinafter as "the jail altercation"). Plaintiff further alleges that Defendants thereafter instituted improper judicial proceedings against Plaintiff by alleging two counts of assault and one count of terroristic threatening. Plaintiff was acquitted by a jury of these charges on July 13, 2007 (referred to hereinafter as "Plaintiff's criminal trial").

On March 11, 2008, Plaintiff filed a complaint with this Court seeking compensatory and punitive damages for malicious prosecution, excessive use of force, and assault and battery. A jury trial has been set for November 4, 2009. Plaintiff and Defendants have filed several motions in limine to exclude evidence, and Plaintiff has filed a motion requesting that the jurors view the jail in which the alleged conduct took place. The Court will address each of these motions separately.

## DISCUSSION

**I.     Investigation of Plaintiff's Civil Rights Complaint by the U.S. Department of Justice**

Plaintiff's motion asks that the Court preclude Defendants from offering evidence or testimony relating to Plaintiff's civil rights complaint and the subsequent investigation by the U.S. Department of Justice ("DOJ"). After the jail altercation, Plaintiff filed a complaint with the DOJ alleging a violation of his civil rights. The DOJ sent a letter dated March 4, 2009, to Jailer Strode of the Warren County Regional Jail. The letter states in pertinent part:

> We received a complaint that unknown officers of your agency may have been involved in violating the civil rights of Marlon B. Johnson. We recently completed our review of the results of the investigation of that complaint to determine whether a federal criminal prosecution was warranted. After careful consideration, we concluded that the evidence does not establish a prosecutable violation of the federal criminal civil rights statutes. Accordingly, we have closed our investigation. Please be advised that our conclusion in this matter does not preclude other components of the U.S. Department of Justice from taking action, where appropriate, under their separate enforcement authority.

Plaintiff argues that this evidence should be excluded as hearsay because there is no indication of who performed the investigation or who was interviewed during said investigation. Therefore, the opinions and conclusions in the letter are not based on firsthand knowledge. Plaintiff cites *Miller v. Field*, 35 F.3d 1088 (6th Cir. 1994), in support of his position. *Miller* held that third-

party statements contained in a police report were inadmissible because they constituted hearsay within hearsay and lacked trustworthiness. *Id.* at 1091-93. Statements in the report that were within the officer's firsthand knowledge were admissible under Rule 803(8). *Id.* at 1091.

Defendants assert that the DOJ letter is admissible under Federal Rule of Evidence 803(8)(C). Rule 803(8) provides that the following are not excluded by the hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8). Therefore, Rule 803(8)(C) allows evidence of public records and reports to be admitted as an exception to the hearsay rule, so long as the source or circumstances do not indicate lack of trustworthiness. Defendants argue that the DOJ letter falls within the public records exception because Plaintiff has not shown that the letter lacks trustworthiness. In addition, although the statements in the letter are conclusory, Defendant argues that opinions and conclusions based on facts in a report are admissible under *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988).

"To be admissible under Rule 803(8)(C) a report must first be a set of 'factual findings.'" *Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22 (6th Cir. 1984) (quoting *Baker v. Elcona Homes Corp.*, 588 F.2d 551 (6th Cir. 1978)). Opinions and conclusions in reports may be admissible "[a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement . . . ." *Beech*, 488 U.S. at 170. Courts look to four factors when determining if a report is considered trustworthy: "(1) the timeliness of the investigation, (2) the

special skill or experience of the investigators, (3) whether the agency held a hearing, and (4) possible motivational problems." *Bank of Lexington & Trust Co. v. Vining-Sparks Sec., Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) (citing *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 933 (1979)). These four factors are not exclusive. The Court may also consider "any circumstance which may affect the trustworthiness of the underlying information, and thus, the trustworthiness of the findings." *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009) (quoting *In re Complaint of Paducah Towing Co., Inc.*, 692 F.2d 412, 420 (6th Cir. 1982)). The burden is on the plaintiff to show that the report is untrustworthy. *Bank of Lexington*, 959 F.2d at 616. In addition, "safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them." *Beech*, 488 U.S. at 167-68.

      The Court first notes that "the personal knowledge requirement does not extend to official reports admissible under Rule 803(8)." *Alexander*, 576 F.3d at 562. The Court finds, however, that the DOJ letter is inadmissible, as it lacks the requisite trustworthiness to be admitted under Rule 803(8)(c). The Court acknowledges that factors (2) and (4) of the four trustworthy factors considered do not appear to indicate lack of trustworthiness. The Court does not doubt that the Criminal Section of the Civil Rights Division of the DOJ "is dedicated to the enforcement of civil rights statutes" and satisfies factor (2). In addition, neither party raises any motivational problems (factor (4)) that might have existed when the DOJ rendered its decision. As to factor (1), however, the Court has no way of knowing if the investigation was timely. "The timeliness factor focuses on how much time passed between the events being investigated

4

and the beginning of the investigation." *Chavez v. Carranza*, 559 F.3d 486, 496 (6th Cir. 2009). The only information before the Court is that the jail altercation occurred on March 14, 2007, and this letter was sent to Jailer Strode on March 4, 2009, nearly two years after the incident occurred. The letter states that the DOJ received a complaint from Marlon B. Johnson, but it does not state when the complaint was received, or how long it took to conduct an investigation.

In fact, the letter provides no factual details regarding the incident or investigation. It does not state the method of inquiry or who took part in the investigation. The letter does not reference Defendants by name, but instead refers to them as "unknown officers." Based on the vague wording of the letter, the possibility exists that this complaint might have been filed in regards to an entirely separate incident from the one currently being litigated. The Court also has no way of knowing if a hearing took place as part of the investigation, although a hearing need not have taken place to find that the trustworthiness requirement is met. *Bank of Lexington*, 959 F.2d at 617 ("[T]he rule 'makes no reference to such a requirement; the factor appears only to be one of those suggested by the Advisory Committee." (citation omitted)). The Court believes, however, that some indication of the investigative method employed should be referenced in the report. In all of the cases cited by Defendants to support admissibility, the Courts were considering reports that contained at least some factual findings. *See, e.g.*, *Beech*, 488 U.S. at 157 (JAG Report contained finding of fact and was supported by 60 attachments); *Chavez*, 559 F.3d at 496 (Truth Commission report contained factual findings of the investigation, which included numerous interviews and review of thousands of complaints); *Combs v. Wilkinson*, 315 F.3d 548, 554 (6th Cir. 2002) (Use of Force Committee Report "detailed the committee's factual findings, conclusions, and recommendations . . . ."). The DOJ letter in

this case contains no factual findings, details, or explanations.

Even if the letter were admissible under the hearsay exception, the Court finds that Rules 402 and 403 mandate its exclusion. The probative value of the letter is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. First, the Court fails to see how the DOJ letter will tend to make any fact more or less probable. Fed. R. Evid. 401. The letter addresses a violation of federal criminal civil rights statutes, which are not at issue in this action. In addition, the letter only states that the DOJ concluded there was no "prosecutable violation." This implies discretion on the part of the DOJ as to whether to prosecute a violation or not. The letter is not determinative, and its probative value is minimal. In contrast, the probability of misleading the jury or confusing the issues is high. An official letter from a government agency which states that Plaintiff's DOJ complaint did not pass muster is likely to receive undue weight from the jury. Moreover, the DOJ letter would lead to confusion of the issues since it addresses federal criminal prosecution, not the allegations made in the present case. For the above listed reasons, the Court finds that the DOJ letter is inadmissible.

## II.     Statements from Deposition of Defendant Expert Don Leach

According to Defendants, Dr. Don Leach is an expert in the use of force by police officers and jailers. Dr. Leach gave a deposition on July 14, 2009, which Defendants seek to admit as evidence since Dr. Leach is unavailable for trial. Plaintiff moves to exclude several of Dr. Leach's statements pursuant to Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

>sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit uses a four-part test to determine the admissibility of expert testimony: "(1) a qualified expert (2) testifying on a proper subject (3) which is in conformity to a generally accepted explanatory theory (4) the probative value of which outweighs its prejudicial effect." *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6th Cir. 1993) (quoting *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1208 (6th Cir. 1988). Expert opinion may be based on facts or data not otherwise admissible, so long as they are of the type "reasonably relied upon by experts in the particular field in forming opinion . . . ." Fed. R. Evid. 703. This may include inadmissible hearsay. *See, e.g., Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-29 (6th Cir. 2002). Plaintiff seeks exclusion of Dr. Leach's statements regarding the states of mind of witnesses and parties, credibility of witnesses and parties, whether Plaintiff suffered a serious injury, and Hurst's separate lawsuit against the County. The Court addresses each of these issues in turn.

    *A.    State of Mind*

Plaintiff argues that Dr. Leach's testimony improperly offers conclusions as to the states of mind of the parties and witnesses. According to Plaintiff's motion, Dr. Leach made statements such as "Officer Kay was startled," Plaintiff was "very abusive," and Plaintiff was "almost intimidating to the officers." Plaintiff alleges that these statements were conclusions based on notes and interviews with the Defendants, and that these conclusions as to a person's intent or thought process are not admissible. Plaintiff cites to *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24 (D.D.C. 2007), in support of his argument. In *Halcomb*,

7

the plaintiff alleged false arrest, assault and battery, and intentional infliction of emotional distress against police officers and the District of Columbia.  The Court ruled that the plaintiff's expert could not testify "concerning the credibility, trustworthiness, lawabidingness, character, or state of mind of any party or witness."  *Id.* at 29.

Defendants counter that Dr. Leach was merely restating the events as were told to him, and upon which he founded his opinion.  Defendants' response argues that Dr. Leach was merely responding to the request that he "tell the jury what happened that night as he was told by the officers and the defendants."  In addition, the Defendants assert that redaction of Dr. Leach's deposition would be confusing to the jury.  Instead, Plaintiff may cross-examine the other witnesses at trial, all of whom were interviewed by Dr. Leach.

Federal Rule of Evidence 704 does not prevent experts from offering opinions on ultimate issues to be decided by the jury.  A party's state of mind, however, is not within the knowledge of any expert.  *See Woodhull v. County of Kent*, 2006 WL 2228986, *6 (W.D. Mich. Aug. 3, 2006) ("Objective facts and circumstances may provide evidence of a defendant's state of mind, but conclusory statements . . . do not assist the trier of fact."); *United States v. Libby*, 461 F. Supp. 2d 3, 7 (D.D.C. 2006) ("Expert testimony will also be precluded if it would usurp the jury's role as the final arbiter of the facts, such as testimony on witness credibility and state of mind.").  Various courts have excluded expert testimony on issues relating to state of mind in civil cases.  *See, e.g.*, *Halcomb*, 526 F. Supp. 2d at 29-30 (excluding statements that "plaintiff was 'humiliated,'" that the defendant's acts were "ministerial, authoritative, and vindictive," and that defendant acted "wittingly," among others); *Woodhull*, 2006 WL 2228986, *6 (expert could not give conclusory statements that defendant acted with "deliberate indifference"); *Meals v.*

*City of Memphis*, 2005 WL 5988642, *2 (W.D. Tenn. Feb. 10, 2005) ("[N]either expert may testify as to the perceptions of Mr. Harris himself or the effect of the alleged pursuit on Mr. Harris' state of mind.").

The Court acknowledges that Dr. Leach's statements were made in response to a request that he restate the events, as told to him by the police officers. As stated in Plaintiff's motion, however, Dr. Leach's restatements were state of mind conclusory opinions. Based on the facts available, Dr. Leach could not know that Officer Kay was "startled," or that Plaintiff was "very abusive" or "intimidating." These conclusory statements are prejudicial and unhelpful to the jury. In a case in which so much depends upon the behaviors and beliefs of the parties, the jury should not be unduly swayed by an expert's conclusions. The Court realizes that redactions will make the deposition testimony more confusing, but the potential prejudice of these statements outweighs their inclusion to make the testimony comprehensible. The Court believes the events in question will become clearer to the jury through other witness testimony. Therefore, Dr. Leach's statements concerning state of mind are inadmissible. However, the Court desires to see the deposition transcript and exactly which comments are in issue.

### B.     *Credibility*

Plaintiff also alleges that Dr. Leach improperly comments upon the parties' credibility, and that testifying to the ultimate issues of credibility takes this responsibility from the jury. Dr. Leach stated that he did not believe Plaintiff's version of the events, but instead found the Defendants to be more credible. Defendants argue that Plaintiff's counsel originally elicited the testimony regarding Plaintiff's credibility, thus opening the door for the opposing party to introduce inadmissible evidence in response. *See United States v. Ramos*, 861 F.2d 461, 468-69

9

(6th Cir. 1988).

Expert testimony regarding witness credibility is generally considered improper.. *See, e.g.*, *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) ("Regardless of the intent or motivation of the expert in commenting on the eyewitness testimony, we agree . . . that the testimony regarding the credibility of eyewitness testimony was improper."); *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 29 (D.D.C. 2007) (expert's statements were held inadmissible where expert stated he was "inclined to accept the Plaintiff's version of events" and implied that the defendant was untruthful). Allowing experts to testify as to credibility removes that role from the jury. *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891); *EEOC v. Ford Motor Co.*, 98 F.3d 1341, 1996 WL 557800, *11 (6th Cir. Sept. 30, 1996) ("The credibility of witnesses has historically been the sole function of the fact finder."). This issue becomes especially important when the credibility of witnesses weighs heavily on the outcome of the trial. *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005).

Dr. Leach's testimony as to the credibility of the parties and witnesses is inadmissible, unless Defendant can show that Plaintiff "opened the door" by first eliciting the inadmissible evidence. "When one party has 'opened the door' on an issue, by eliciting prejudicial or inadmissible testimony, 'an opponent, in the court's discretion [may] introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.'" *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (citations omitted). In these cases, an inadmissible or prejudicial issue is generally brought up at trial, and the opposing party is allowed, at the court's discretion, to offer evidence on the same subject as a rebuttal. *See, e.g.*, *United States v. Ramos*, 861 F.2d 461, 468 (6th Cir. 1988); *U.S. v. Peco*, 784 F.2d 798, 805 (6th

Cir. 1986).

The present case differs from other "opened the door" cases in that Dr. Leach's testimony will be admitted by way of deposition, not live testimony.  Therefore, the Court has discretion to redact inadmissible portions of Dr. Leach's testimony prior to trial.  Any statements made by Dr. Leach regarding credibility may be redacted, whether the questioning was initiated by Plaintiff or Defendants' counsel.  After redaction, the concern that Plaintiff "opened the door" to the admissibility of irrelevant evidence no longer exists.  In addition, the credibility of the parties plays an important role in the outcome of this case, and it should be left to the jury to make these credibility determinations. Therefore, the Court finds that Dr. Leach's statements concerning the credibility of witnesses or parties are inadmissible.

> C.   *Serious Injury*

Dr. Leach testified that, based on Plaintiff's medical records and actions, Plaintiff's injuries were not serious.  Plaintiff contends that since Dr. Leach is not a medical doctor, he is not qualified to comment on Plaintiff's injuries.  Defendants did not respond to this issue.  Rule 702 requires that an expert be "qualified . . . by knowledge, skill, experience, training, or education . . . ."  Fed. R. Evid. 702.  Opinions outside an expert's area of expertise are "neither reliable nor helpful to the trier of fact."  *Halcomb*, 526 F. Supp. 2d at 27 (the "source and severity" of plaintiff's injuries were outside the expertise of expert who was only qualified to testify with regard to existence of probable cause and reasonable amount of force in effecting arrest).  Defendants do not assert that Dr. Leach has relevant medical experience or education to qualify him as an expert as to whether or not Plaintiff's injuries were serious.  Therefore, Dr. Leach's statements about the seriousness of Plaintiff's injuries are inadmissible.

### D. *Defendant Hurst's Separate Lawsuit*

Finally, Plaintiff requests the Court exclude portions of the testimony where Dr. Leach is questioned about the importance of Defendant Hurst's pending lawsuit against the County. Plaintiff argues that this line of questioning is based on personal opinion (not expertise) and irrelevant under Federal Rule of Evidence 402. Defendants did not respond to this issue. Because Defendants have not presented any argument as to why this information is relevant, and the Court cannot conceive of any on its own, the Court finds that any questioning related to Defendant Hurst's pending suit against the County is inadmissible and should be excluded.

This order is rather general in that Dr. Leach's deposition transcript was not filed. Defendants are ordered to provide a copy of the deposition transcript to the Court and parties by October 27, 2009. Plaintiff shall have until October 29, 2009, to provide the Court with a memorandum outlining page and line as to what he wishes to exclude. This issue could be moot if Dr. Leach were to testify at trial. Defendants shall inform the Court if Dr. Leach will be testifying at trial or by deposition.

### III. Motion to Allow Jurors to View Jail

Plaintiff asks that the Court allow the Jurors to view the Warren County Jail because this is where the jail altercation took place. Plaintiff believes viewing the jail will aid the jurors in rendering their decision. The Court has wide discretion in its decision to allow or disallow the jury to view the jail. *See U.S. v. Moonda*, 2009 WL 3109834, *8 (6th Cir. 2009) (slip copy). Courts generally consider such factors as "the importance of the information to be gained by the view to the issues in the case, changed conditions, practicality, and whether the same information has been secured from maps, photos or diagrams and testimony from witnesses." 2

McCormick on Evidence § 219 (6th ed. 2006).

Plaintiff's motion does not specify why a view of the jail would be material to the case, or why the same information could not be given to the jury through other demonstrative evidence. The fact that all of the events in question occurred at the jail is not a sufficient justification for the expense and delay that would be necessary. Therefore, Plaintiff's Motion to Allow Jurors to View Jail is denied.

### IV.     Defendants' Prior Bad Acts

*A.     Prior Instances of Excessive Force - Defendants Bryan & Hurst*

Defendants move to preclude Plaintiff from offering any evidence of improper or excessive use of force in other instances in regards to Defendant Brandon Bryan. Defendants argue that this evidence is inadmissible character evidence under Rule 404(b). Evidence of other crimes or bad acts is not admissible "to prove the character of a person in order to show action in conformity therewith," although such evidence may be admissible for other purposes, including motive, intent, and knowledge. Fed. R. Evid. 404(b). Therefore, the evidence must be probative of a material issue other than character. *United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000) (citing *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). In his response, Plaintiff argues that prior instances of excessive force should be admissible as evidence against Defendants Bryan and Tom Hurst. Plaintiff states that the reason for admission of this evidence is "to show that [Defendant] has a propensity to use excessive force while escorting prisoners." Rule 404(b) was enacted to prevent the use of evidence for this very purpose. Therefore, evidence of Defendants Bryan and Hurst's improper or excessive use of force in other instances is inadmissible.

B.	*Sexual Contact with Female Inmate - Defendants Herrington & Hurst*

Defendants move to preclude Plaintiff from introducing evidence that Defendants Brandon Herrington and Tom Hurst had sexual contact with female inmates. Defendants also seek to exclude evidence concerning the results of the polygraph tests that both men took after the allegations were made. Defendant Herrington failed the polygraph test and later admitted that he had failed to report the sexual contact to his superiors. He was dismissed from his position. As to Defendant Hurst, the Court has no knowledge of the results of his polygraph test, but will analyze this issue as if he also failed the polygraph test.

Defendants argue that this evidence is inadmissible as irrelevant under Federal Rule of Evidence 401, prejudicial under Rule 403, and inadmissible hearsay under Rule 802. Moreover, Defendants argue that Rule 608(b) prevents Plaintiff from offering extrinsic evidence on a collateral matter. Plaintiff argues that this evidence is relevant to show that Defendants' have lied to their supervisors about these incidents, and are therefore not credible witnesses.

The Court first notes that evidence of Defendants' sexual contact with female inmates is not relevant to the case. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that Defendants Herrington and Hurst had sexual contact with female inmates has no bearing on any issue in this case. Therefore, such evidence is inadmissible.

Questioning in regards to Defendants' character for truthfulness may be used to impeach the Defendants under Rule 608. Lying to one's supervisors constitutes a specific instance of conduct which is probative of truthfulness. Under Rule 608(b), Plaintiff may not use extrinsic

14

evidence, such as polygraph test results, to impeach Defendants. Fed. R. Evid. 608(b). Therefore, Defendants' acts of lying may only be "inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." *Id.* In addition, Plaintiff must accept the witness' "flat denial on its face, without seeking to introduce extrinsic evidence" to refute the witness' testimony. *U.S. v. Zidell*, 323 F.3d 412 (6th Cir. 2003). In sum, Plaintiff may use cross-examination to question Defendants about specific instances of lying for purposes of impeachment only. Plaintiff may not inquire as to the content of the alleged "lie." Plaintiff shall approach the Court before asking these questions.

   C. *Sexual Harassment of Female Co-Workers - Defendant Seiler*

Defendants seek to exclude evidence that Defendant Seiler sexually harassed his female co-workers because such evidence is irrelevant and prejudicial. Plaintiff has not responded to this issue. The Court finds that the evidence does not tend to prove or disprove any material fact in this case, and is therefore irrelevant and inadmissible under Federal Rules of Evidence 401 and 402.

**V. Criminal Trial Testimony**

   A. *Inmate David Smith's Trial Testimony*

David Smith was an inmate at the Warren County Jail when the incident at issue in this case occurred. Smith testified at Plaintiff's criminal trial in July of 2007. Smith testified that he heard the incident in the jail because he was located in an adjacent cell. He also testified that an unknown deputy had told him that someone "on high" would make his stay in jail "a living hell"

if Smith were to testify against the jail. The identities of the deputy and his superior were unknown to Smith at Plaintiff's criminal trial.

Defendants now move to preclude Plaintiff from introducing David Smith's criminal trial testimony. Defendants contend that Smith's testimony is inadmissible hearsay which is not subject to any exception. Specifically, Defendants assert that Smith's criminal trial testimony does not fall under the "former testimony" exception of 804(b)(1) because Smith is not unavailable and the prosecutor in the criminal case does not constitute a "predecessor in interest." Fed. R. Evid. 804(b)(1). Defendants also argue that Smith's testimony contains hearsay within hearsay, which is inadmissible under Federal Rule of Evidence 805. Finally, Defendants assert that if Smith's trial testimony is admitted, it would be highly prejudicial under Rule 403.

Plaintiff asserts that Smith is currently unavailable, despite Plaintiff's good faith efforts to locate him. Plaintiff has contacted his last known address in Bowling Green, Kentucky, and has hired a detective to locate Smith. Plaintiff also claims that the prosecutor in the criminal trial qualifies as a "predecessor in interest" since Defendants' motives are the same as the prosecutor's with respect to cross-examination of Smith's testimony. Plaintiff cites *U.S. v. Vartanian*, 245 F.3d 609 (6th Cir. 2001), in support of his argument. In *Vartanian*, a group of plaintiffs filed a civil suit against Vartanian, alleging violations of housing provisions. 245 F.3d at 612. Vartanian was later charged criminally with using force or threats to intimidate and interfere with real estate agents. *Id.* The Sixth Circuit found that testimony from the civil trial was admissible in the criminal trial because the motives were synonymous in regards to the relevant testimony. *Id.* at 614. *Vartanian* also stands for the idea that the transition between

16

civil and criminal trials does not affect Rule 804(b)(1) analysis.

Rule 804(b)(1) provides a hearsay exception for former testimony if the declarant is unavailable, the testimony was given as a witness at another hearing, and "the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1). The Court notes that Defendants were not parties to the criminal trial. Therefore, in order to meet the standards of 804(b)(1), the prosecutor must qualify as a predecessor in interest. The Sixth Circuit has adopted the definition of a predecessor in interest as spelled out in *Lloyd v. American Export Lines, Inc.*: "[T]he previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party." 580 F.2d 1179, 1187 (3d Cir. 1978), *cert. denied*, 439 U.S. 969 (1978).

It is not unheard of for a prosecutor in a criminal trial to be deemed a predecessor in interest to defendants in a civil action. *See Wright v. Kelly*, 1998 WL 912026 (W.D.N.Y. Oct. 16, 1998). *Wright* involved a similar fact situation in which a prisoner was criminally charged after an altercation with corrections officers, was acquitted, and then filed a civil action against the officers for malicious prosecution and use of excessive force. The defendant sought to exclude testimony given by the plaintiff (now deceased) in the prior criminal trial. *Id.* at *5. The Court noted in dicta that the prosecutor qualified as a predecessor in interest because "[t]he prosecutor in the criminal case, and the defendants here, each seek to show that plaintiff, not the officers, initiated the use of force." *Id.* at *6.

In order to satisfy Rule 804(b)(1), the prosecution and Defendants must have a "similar

17

motive" during cross-examination, not an identical one. *U.S. v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J., concurring). The Court finds that the prosecutor and Defendants both have a similar motive to discredit Smith's testimony and to show that Plaintiff was the one at fault. Both the criminal trial and the present civil action revolve around the same jail altercation and involve substantially the same issues. Smith's testimony is relevant to both cases. The prosecutor cross-examined Smith, so Defendants have not been denied that opportunity. The fact that Defendants disagree with the prosecutor's tactical decisions does not prevent application of Rule 804(b)(1). The test is whether there was a "similar motive." The Court finds that there was, and that the prosecutor qualifies as a predecessor in interest. Smith's criminal trial testimony is admissible.

The Court does not agree with Defendants that Smith's statements regarding the threat he received from an unknown deputy are inadmissible as hearsay within hearsay. Smith's statements are not being "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Instead, Smith's statements are offered to show that he was threatened, not that the unknown deputy's threatening statements were actually true, i.e., that the threats would actually be executed. Therefore, the portion of Smith's testimony referring to the unknown deputy's threat is non-hearsay and admissible.

      *B.*    *Defendants' Trial Testimony*

Finally, Defendants request that the Court preclude Plaintiff from introducing testimony given by Defendants at Plaintiff's criminal trial. Defendants argue that the testimony is inadmissible hearsay and does not satisfy the former testimony exception of Rule 804(b)(1) because the Defendants are available for trial. In addition, Defendants assert that the testimony

is irrelevant if Defendants take the stand and testify in this trial.  Defendants also argue that it would be prejudicial to allow the testimony in because the jury might get the impression that Defendants were the ones prosecuting Plaintiff, not the state of Kentucky.  Plaintiff's response did not address the Defendants' criminal trial testimony.

The Court finds that even though Plaintiff did not respond, Defendants' trial testimony is admissible as non-hearsay admissions under Federal Rule of Evidence 801(d)(2).  Rule 801(d)(2) provides that a statement is not hearsay if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . ."  Here, Defendants are parties to the current actions, and the former trial testimony is being offered against them.  It may also be used for impeachment purposes and admitted as evidence under Rule 801(d)(1).  Fed. R. Evid. 801(d)(1) (Statement is not hearsay if "declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath . . . at a trial . . . .").

The Court does not agree with Defendants that the former trial testimony is irrelevant.  Plaintiff's criminal trial centered around the same incident which is currently being litigated in this forum.  Defendants' criminal trial testimony likely focused on the jail altercation, and is relevant to whether Plaintiff can prove malicious prosecution, assault and battery, and excessive use of force.  The fact that Defendants are available to testify in the civil trial is not a bar to the operation of Rule 801(d)(2).  In addition, the Court does not believe that the trial testimony will be unduly prejudicial.  The probative value of this evidence outweighs the possibility that the jury will get the "incorrect impression" that Defendants were prosecuting Plaintiff.  Due to the

nature of the alleged claims in this case, the jury will already be aware of the criminal trial. Therefore, the Court finds that the Defendants' criminal trial testimony is admissible.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motions in Limine are GRANTED; Plaintiff's Motion to Allow Jurors to View Jail is DENIED; Defendants' Motions in Limine are GRANTED IN PART and DENIED IN PART. Defendants shall file Dr. Leach's deposition transcript with the Court and parties by October 27, 2009, or notify the Court that Dr. Leach will testify at trial. Plaintiff shall file his memorandum by October 29, 2009.